JOHN J. K. CASKIE, Respondent, v. INTERNATIONAL RAILWAY COMPANY, Appellant.

48

(Argued December 6, 1932; decided January 17, 1933.)

*James C. Sweeney* and *Henry W. Killeen* for appellant. There is no evidence tending to show that Mitten had apparent authority to make the alleged express contracts in the defendant's behalf; and the submission of the case to the jury on the theory of express contract is prejudicial and reversible error. (*Colaizzi* v. *Pennsylvania R. R. Co.*, 143 App. Div. 638; 208 N. Y. 275; *Barker* v. *Cunard S. S. Co.*, 91 Hun, 495; *Wolf* v. *Goodhue Fire Ins. Co.*, 43 Barb. 400; 41 N. Y. 620; *Smith* v. *Weston*, 159 N. Y. 194; *Freelander* v. *Wilson*, 187 App. Div. 919; *Goldstein* v. *Cornwall*, 215 App. Div. 402; *Madden* v. *Chalmers*, 215 App. Div. 549; *Moody* v. *Wise*, 188 App. Div. 224; *Traitel Marble Co.* v. *Brown Brothers, Inc.*, 159 App. Div. 485; *Hastings* v. *Brooklyn Life Ins. Co.*, 138 N. Y. 473; *Oakes* v. *Cattaraugus Water Co.*, 143 N. Y. 430; *Peek* v. *Dexter Sulphite Pulp & Paper Co.*, 164 N. Y. 127; *McIlrath* v. *Waterbury Sons & Co.*, 193 App. Div. 491; *Hardin* v. *Morgan Lithograph Co.*, 247 N. Y. 332; *Camacho* v. *Hamilton Bank Note & Engraving Co.*, 2 App. Div. 369;

158 N. Y. 663; *Sloman* v. *Star Co.*, 149 App. Div. 500; 210 N. Y. 586; *Rathbun* v. *Snow*, 123 N. Y. 343; *Bankers Trust Co.* v. *International Ry. Co.*, 207 App. Div. 579; 239 N. Y. 619; *Lyon* v. *West Side Transfer Co.*, 132 App. Div. 777; *First Nat. Bank* v. *Ocean Nat. Bank*, 60 N. Y. 278; *Pope* v. *Bank of Albion*, 57 N. Y. 126; *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.*, 13 N. Y. 599; *Farmers Fund, Inc.*, v. *Tooker*, 207 App. Div. 37; *Caldwell* v. *Mutual Reserve Fund Life Assn.*, 53 App. Div. 245.) Each of the alleged express contracts, as testified to by the plaintiff, is unusual and outside of the ordinary course of business and as matter of law no agent can have apparent authority to make an unusual and extraordinary contract. (*First Nat. Bank* v. *Ocean Nat. Bank*, 60 N. Y. 278; *Caldwell* v. *Mutual Reserve Fund Life Assn.*, 53 App. Div. 245; *Berwin & Co.* v. *Hewitt Realty Co.*, 199 App. Div. 453; 235 N. Y. 608; *Rathbun* v. *Snow*, 123 N. Y. 343; *Lyon* v. *West Side Transfer Co.*, 132 App. Div. 777; *Gause* v. *Commonwealth Trust Co.*, 124 App. Div. 438; *Hardin* v. *Morgan Lithograph Co.*, 247 N. Y. 332; *Bankers Trust Co.* v. *International Ry. Co.*, 207 App. Div. 579; 239 N. Y. 619; *Camacho* v. *Hamilton Bank Note & Engraving Co.*, 2 App. Div. 369; *Sloman* v. *Star Co.*, 149 App. Div. 500; 210 N. Y. 586.) There is no evidence that the defendant knew of the existence of any of the alleged express contracts and no evidence that Mitten ever made any like contract in the defendant's behalf and for this reason the defendant cannot be held liable on the alleged express contracts. (*Corn Exchange Bank* v. *American Dock & Trust Co.*, 163 N. Y. 332; *Jacobus* v. *Jamestown Mantel Co.*, 211 N. Y. 154; *Bankers Trust Co.* v. *International Ry. Co.*, 207 App. Div. 579; 239 N. Y. 619; *Gause* v. *Commonwealth Trust Co.*, 124 App. Div. 438.)

*Frank G. Raichle, Carlos C. Alden* and *J. C. Randal* for respondent. On undisputed evidence and as a matter of law, Mitten is shown to have had express authority

to employ plaintiff on behalf of defendant. (*Rebora* v. *British & Foreign M. Ins. Co.*, 258 N. Y. 379.) Defendant is liable on the contract made with plaintiff by its general agent, Mitten Management, Inc., acting through Mitten, its executive head. (*Corklite Co.* v. *Rell Realty Corp.*, 249 N. Y. 1; *Dudley* v. *Perkins*, 235 N. Y. 448; *Rossiter* v. *Rossiter*, 8 Wend. 494; *Munn* v. *Commission Co.*, 15 Johns. 44; *Butler* v. *Mates*, 9 Wall. 766; *Lightbody* v. *North American Ins. Co.*, 23 Wend. 18; *Lewis* v. *Chapin*, 263 Mass. 168; *Crain* v. *Bank*, 114 Ill. 516; *Thurber* v. *Anderson*, 88 Ill. 167; *Watteau* v. *Fenwick*, 1 Q. B. 346; *Brooks* v. *Shaw*, 197 Mass. 376; *Ernst* v. *Harrison*, 86 N. Y. Supp. 247; *MacCracken* v. *Hamburger*, 139 Penn. St. 326; *Hubbard* v. *Penbrook*, 124 Penn. St. 291; *Lamb* v. *Thompson*, 31 Neb. 448.)

O'BRIEN, J.  Plaintiff sued in the sum of $200,000 on three causes of action for legal services extending from September, 1922, to January, 1930, and recovered judgment for $80,000.  By stipulation, it was reduced by the Appellate Division to $55,000 for the reason that the first cause was barred by the Statute of Limitations.  The second cause of action alleges $25,000 as reasonable value of services rendered between June 30, 1923, and March 1, 1928, in relation to the investigation of conditions growing out of a strike conducted by defendant's employees. The third cause is for $150,000 as reasonable value of services between December 1, 1923, and December 31, 1929, in reorganizing defendant's claim department and in supervising the defense of negligence actions.

That plaintiff performed valuable services which inured to the benefit of defendant has been fully proved and indeed is not disputed.  During the years extending from 1924 to 1929 he was employed also as general attorney for the Philadelphia Rapid Transit Company and at the same time acted, with the title of general attorney and head of the claims and negligence departments, for defendant whose offices were in Buffalo.  He never per-

sonally participated in trials. For that duration he spent three hundred and ninety-three days in Buffalo on defendant's affairs and while in Philadelphia he kept in touch with many of them by means of telephone, telegraph and written reports. In support of the allegations in the complaint that his professional services were rendered at defendant's special instance and request and upon its promise to pay reasonable value, plaintiff testified that Thomas E. Mitten, who was an important stockholder in defendant corporation as well as in the Philadelphia Rapid Transit Company and who reposed great confidence in him, not only assigned to him the laborious work which he performed but also assumed, in behalf of defendant, to promise compensation to plaintiff in addition to the salary which he was receiving from the Philadelphia Rapid Transit Company. The evidence shows that Mr. Mitten detailed plaintiff to the three tasks of clearing up the situation at Buffalo in respect to jitney buses which operated in competition with defendant, in respect to obtaining convictions against employees who had used violence against defendant's passengers and property and to reforming the system of handling claims and defending actions for negligence. When he accepted these definite tasks at Mr. Mitten's request, he had no idea of the length of time which would necessarily be consumed. He had in mind the possibility of finishing in a month. The work at Buffalo assigned to him by Mr. Mitten appeared at the time to be of a transient nature. His Philadelphia tenure was permanent.

The principal defense consists of allegations that no express or even implied promise to pay plaintiff existed on the part of any one authorized to contract in behalf of defendant, but that, on the contrary, the services of plaintiff, as an employee of the Philadelphia Rapid Transit Company, were loaned by it to defendant and that defendant has reimbursed that corporation for his services. During the years that plaintiff was employed

by the Philadelphia Rapid Transit Company his salary ranged from $9,600 a year in 1919 to $15,000 in 1922, $20,000 in 1923 and $24,000 from 1925 to 1929, with an additional bonus of ten per cent each year. To this salary and bonus were added gifts of several hundred shares of stock. Mr. Mitten, in addition to his large holdings in the Philadelphia company and in defendant, was also the principal stockholder and president of Mitten Management, Inc., which held a contract with each corporation for the complete charge and supervision, "subject to the direction of the board of directors," of the properties and business of each. He was also a director of defendant and chairman of its executive committee and was recognized as the controlling force in the affairs of both corporations. In 1920 he was president of the Philadelphia company and at the beginning of that year Mr. Tully, who had long been connected with that corporation, became president of defendant. The two corporations, both dominated by Mitten, maintained the most harmonious relations. Shortly before Tully assumed the presidency of defendant, he and Mitten orally made an arrangement whereby defendant would have the right to draw upon any employee, both operating and professional, of the Philadelphia organization for assistance, and defendant, upon receiving a bill, would pay to the Philadelphia company the salaries of these men while engaged in service for the Buffalo corporation at the rate which they were accustomed to receive in Philadelphia. That company did, from time to time, bill defendant for such services by numerous employees. In September, 1922, the assistant auditor of the Philadelphia company in writing requested plaintiff to send to him the time which plaintiff and others of its employees had spent at Buffalo in order that their salaries could be charged to the proper account. Defendant paid the Philadelphia company $6,666.66 for the time spent by plaintiff on its affairs from January, 1922, to April,

1923, and again, after plaintiff had presented his claim upon which this action is founded, defendant paid to that corporation, upon its demand, the sum of $33,333.34 for the use of plaintiff's services during portions of the years extending from April, 1923, to December, 1929. The whole amounted to $40,000. In addition defendant paid plaintiff for his expenses during the time embraced in the complaint the sum of $17,297.93. Mr. Joyce, a director and member of defendant's executive committee, testified, after the withdrawal of objections to such testimony, that he distinctly and clearly understood that plaintiff would perform necessary services for defendant and that it would be charged by the Philadelphia company for those services. During all these eight years plaintiff never told him that he expected compensation from defendant and this witness never suspected, until three months after Mitten's death, that plaintiff expected to be paid by defendant. Two other members of defendant's executive committee testified to like effect. An attorney who was retained by defendant, through plaintiff, to assist him in special work during the year 1923 testified that plaintiff had informed him that plaintiff was at that time paid by the Philadelphia Rapid Transit Company for his work for defendant at Buffalo. Arthur A. Mitten, the son of Thomas E. Mitten and also chairman of defendant's executive committee, knew nothing of any understanding between his father and plaintiff for extra compensation for services rendered to defendant, and never prior to his father's death heard of any such claim by plaintiff. Plaintiff admits that, although he knew intimately the president, the members of the executive committee and all the men active in defendant's affairs from 1922 to the end of 1929, he never told one of them that Mr. Mitten had promised him that defendant would pay him for his services. However, in a letter to one of the directors in April, 1929, plaintiff did refer to his services to defendant, without compen-

sation " as yet," and the fact that he had assumed his work at Buffalo at Mr. Mitten's request. He states, " I feel myself responsible to Mr. Mitten until he personally relieves me of the responsibility." If defendant's directing officers believed that, for plaintiff's services rendered at Buffalo at Mitten's direction, the Philadelphia company was to be repaid by defendant, their acquiescence in the performance of those services would not lead to an inference of a promise to pay plaintiff.

There is no proof that plaintiff performed any services for defendant except upon the request of Mr. Mitten and no evidence that defendant ever considered his services in any light except as part of the duty owed by him to Mr. Mitten's interests, and no evidence that any one except Mr. Mitten ever suggested payment. Defendant attacks plaintiff's testimony on the ground that the only persons who could corroborate it are dead and on the further ground that in the many letters passing from Mitten to plaintiff, in which plaintiff's work is warmly praised, no reference is made to any compensation in addition to that paid by the Philadelphia company. It attaches importance also to the fact that plaintiff presented no claim to defendant prior to Mr. Mitten's death. However, here lies an issue of fact which the jury resolved in plaintiff's favor. Concluding, therefore, that some kind of promise was made by Mr. Mitten in some capacity, his power to bind this corporate defendant must be examined.

Mitten's functions as chairman of the executive committee do not embrace the authority of a majority of that committee. In his role as president of Mitten Management, Inc., his charge and supervision of defendant's property and business was, pursuant to contract, " subject to the direction of the board of directors of Railway." There is no evidence that in his tacitly recognized position as unofficial but practical master of defendant's affairs he ever suggested to the president or to the board of

directors that plaintiff be paid by defendant. Even such evidence would be ineffective unless followed by proof that his suggestions were observed. The board of directors could have employed plaintiff but it never did. Perhaps defendant's president was vested with like authority. Since the alleged contract is unusual and outside the ordinary course of business, this question is doubtful. (*Hardin* v. *Morgan Lithograph Co.*, 247 N. Y. 332.) Mitten Management, Inc., and probably its president, Mr. Mitten, could under its contract with defendant recommend or approve the employment of persons by defendant. As we read that contract, however, the Management's charge and supervision of defendant's properties and business is " subject to the direction of the board of directors of Railway," and, without direction or ratification by that board, Management's agency was not broad enough to enable it to enter into contracts of employment for such services as have been here proved. The functions of directors may not be abdicated. (*Manson* v. *Curtis*, 223 N. Y. 313.) We agree, therefore, with that part of the charge wherein the trial justice instructed the jury, with plaintiff's consent, that Mitten Management, Inc., had no actual or apparent authority to make the alleged express contract in behalf of defendant. It was defendant's general agent only when acting under the directors. We agree also with that part of the charge which holds that Mr. Mitten possessed no actual authority.

In respect to such powers as to a stranger might seem apparent, plaintiff was not an outsider. He was intimately connected with defendant's affairs as well as other Mitten interests. He knew that his proportionate salary during the time of his early services at Buffalo was charged against defendant by the Philadelphia Rapid Transit Company. It was in fact paid. If at a later date Mitten promised a reward growing out of a partial transfer of plaintiff's services from Philadelphia to Buffalo

and assured him that he would receive additional compensation, there is no evidence that plaintiff had a right to rely upon such an assurance as constituting apparent authority to make a contract. As an attorney, familiar with the law and with defendant's affairs, he could have relied at the most only upon Mitten's influence subsequently to induce the corporation to ratify an understanding between two individuals. His letters of April 2, 1929, and November 13, 1929, warrant no inference except that he had undertaken his work at Mitten's personal request to promote the welfare of a corporation in which Mitten held a large investment. He was a protege of Mitten who respected his energy and ability, and there is no evidence that since 1922 he had attended to any legal affairs except those in which Mitten financially participated. His motives were doubtless mixed; he probably entertained a sense of loyalty toward the powerful financier who had advanced his fortunes for him, and then, too, he may have had reason to hope for some reward; he felt that to refuse Mitten's request would be ungrateful and perhaps indiscreet. There is no evidence that he based his conduct upon a contract which any one at the time was justified in believing to be or was apparently binding upon defendant. Since we have reached the conclusion that there is no evidence to support an inference by one situated as was plaintiff that Mitten was an agent with apparent authority to contract in behalf of defendant, we think that ratification by the corporation of any promise which Mitten made to plaintiff is an indispensable element of a recovery.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

POUND, Ch. J., CRANE, LEHMAN, KELLOGG, HUBBS and CROUCH, JJ., concur.

Judgments reversed, etc.