DAVID STONEMAN *vs.* FOX FILM CORPORATION.

Middlesex.   November 14, 1935. — October 5, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Corporation*, Officers and agents.  *Agency*, Scope of authority, Ratification.

The president of a corporation with by-laws defining as his duties that
he should act as general manager and be in immediate control of the
business, "subject, nevertheless, to the general supervision, advice
and counsel of the board of directors," and giving him power to do
"all acts incident to the position of president or which are authorized
or required by law," did not have unlimited power but was restricted
to doing those things which were usual and necessary in the ordinary
and usual course of the corporate business.

The powers of the president of a corporation were not enlarged by his
ownership of a controlling stock interest in it.

That the directors of a corporation had ratified unauthorized acts of its
president did not confer upon him implied power later to bind the
corporation by acts wholly different from those previously ratified.

The making of representations, in connection with transactions involving
the expenditure by a corporation of sums of money so large that the
transactions fell outside the ordinary and normal course of its business,
was not within the implied powers of its president and general manager.

TORT.   Writ in the Superior Court dated August 12,
1930.

The action was tried before *Swift*, J.   Verdicts for the
plaintiff in the sum of $75,000 were recorded subject to
leave reserved.   Motions for the entry of verdicts for the
defendant were denied.   Both parties alleged exceptions.

*C. R. Branch*, (*W. Noyes* & *C. Ryan* with him,) for the
defendant.

*T. H. Mahony*, (*E. Kurland* & *I. Gorovitz* with him,) for
the plaintiff.

RUGG, C.J.   This is an action of tort for deceit.   It was
submitted to the jury upon three counts of the declaration
which were not for the same cause of action.   It was alleged
in those counts in substance that in October, 1928, the de-
fendant through its duly authorized agents represented to

the plaintiff that it was interested in and controlled the Fox Northeastern Playhouses, Inc., and the Fox Metropolitan Playhouses, Inc., two corporations then recently formed, and was desirous of acquiring in the name of these corporations the leaseholds or fees in such moving picture theatres in New England as the plaintiff might be able to procure; that the defendant solicited and induced the plaintiff to give his time, services, and the benefit of his knowledge and experience toward the acquisition of such leaseholds and fees by falsely representing to the plaintiff that these two corporations were possessed of large cash assets and that each of them had been financed to the extent of twenty millions of dollars through bond issues which had been underwritten by a large and responsible banking house; that these representations were false as the defendant well knew; that the plaintiff, believing these representations to be true and relying on them, was induced to give his time, services and experience toward the acquisition of such leaseholds and fees, and procured certain contracts and agreements to be entered into for the acquisition by these two corporations of leases of several specified theatres; that by reason of the falsity of these representations the two corporations refused, failed and neglected to carry out such contracts and agreements; and that the fair value of the services of the plaintiff thus rendered was a stated amount as to separate transactions. The allegations set forth in the three counts submitted to the jury differ only in that they (1) relate to contracts with different corporations owning theatres in New England and (2) specify variation in the value of services rendered by the plaintiff. The defendant pleaded in its answer a general denial and among other defences that the defendant had no interest in the stock or property of the two corporations or in the theatre properties to be acquired by them and that the representations, if made, were outside the real or apparent authority of any officer, director, agent or attorney in fact of the defendant. Subject to the defendant's exceptions, the trial judge denied motions by it for a directed verdict in its favor on each count. A verdict was returned

in favor of the plaintiff for a substantial amount on each of the three counts.

The record is long and contains many exceptions. The only ones which need be considered relate to the denial of the motions for the entry of verdicts in favor of the defendant. The question thus raised is whether there was any evidence that the representations on which the plaintiff relied were made by authorized agents of the defendant. In the view that we take, the same principles of law apply to each count. They will be combined in a single discussion.

The evidence relevant to the grounds of this decision may be succinctly stated. The defendant is a corporation organized under the laws of New York. Its corporate purposes as set forth in its certificate of incorporation are to purchase, lease, erect and maintain buildings, laboratories, studios, film developing and printing plants, factories, tenements and manufactories, and to purchase, sell and deal in personal property of the same general kind as, therein described pertaining to its business. It contains no mention of the buying, selling, owning or leasing of theatres and theatre properties. By-laws of the defendant provided in part as follows:

"The affairs of the business of the Company shall be managed by a Board of eight Directors who shall respectively be stockholders of record, each owning at least one share, and at least one of such Directors shall be a resident of the State of New York."

"Duties of Directors. — The Board of Directors shall have the control and general management of the affairs and business of the Company. Such Directors shall in all cases act as a Board, regularly convened in the State of New York by a majority of the members thereof, and they may adopt such rules and regulations for the conduct of their meetings, the meetings of the Executive Committee, and the management of the Company as they may deem proper, not inconsistent with these By-Laws and the Laws of the State of New York."

The powers of the president are that he shall "Appoint and remove subject to the approval of the Board of Di-

rectors, all servants, agents and employees of the Company other than the Vice-President, Secretary, and Treasurer, and shall fix their compensation jointly with the Treasurer, subject to the approval of the Board of Directors, and shall make prompt report thereof to the Board. . . . Act as General Manager of the Company at its principal business office, and be in immediate control of the business; subject, nevertheless, to the general supervision, advice and counsel of the Board of Directors. . . . Do and perform all acts incident to the position of president or which are authorized or required by law."

The plaintiff testified that from 1912 to 1928 he had a wide experience in the moving picture industry. In October, 1928, having been invited to the offices of the defendant in New York, he met there one Campbell and one Grainger, who were respectively New England manager and the general sales manager of the defendant. He was told by Grainger that the defendant had determined to get more theatres all over the country, that William Fox (who was president of the defendant) had decided to get into New England and had delegated one Blumenthal to represent the defendant in negotiations to that end. The plaintiff met Blumenthal, who said he had been appointed by the defendant to buy theatres in large quantities. He wanted the plaintiff to go to work immediately and get as many theatres as possible. In consequence of that interview the plaintiff made arrangements for the lease of a theatre in Waltham. When the contract was to be drawn, Blumenthal for the first time said that the Fox Metropolitan Company was to take title, "Of course it is the Fox Film Corporation, but the Fox Film Corporation is not taking the title itself . . . We are taking it in the name of one of our subsidiaries." He then explained that the Fox Metropolitan Company had been organized and the Fox Northeastern Company was to be organized. "They are both organized by us. They are organized by employees of Fox Film. They have no capital but we have arranged with" bankers to underwrite a twenty million dollar bond issue for each one of these companies and "it doesn't make any difference under those circumstances

. . . whether it is taken in the name of the Fox Film direct or either of these subsidiaries." The plaintiff also testified to making arrangements for leasing a group of theatres known as the Milford chain. When he conferred with Blumenthal about concluding this transaction with two of the owners they met William Fox who said that the Fox Film Corporation was acquiring these theatres and that absolute dependence might be placed on whatever Blumenthal said, "He represents the Fox Film and he is negotiating for us." The plaintiff also testified that he made arrangements for the leasing of three other theatres known as the Maine chain and that none of these several transactions arranged by him was finally consummated because, as the plaintiff was told, the bankers refused to make loans to the two corporations and they had no other resources with which to pay for taking over the properties. From the testimony of the plaintiff it appears that the transactions in which he was engaged, if carried out, would involve in rentals covering a period of years several millions of dollars. The compensation of the plaintiff and of Blumenthal was to be paid by the owners of the leaseholds to be transferred and not to any extent by the defendant.

There was ample evidence of false representations which induced the plaintiff to spend time and money in endeavoring to make transfers of leases of theatres, resulting in loss to him. These representations were made chiefly by Blumenthal, and to some extent by William Fox.

The principal business of the defendant was producing and distributing pictures, manufacturing films and selling the same to theatre owners. There was evidence to the effect that the defendant owned one theatre in each of three large cities in this country and owned stock in two corporations which had chains of theatres. William Fox was president of the defendant in 1928 and 1929. He owned a majority of its stock having voting power but there was a large issue of stock without voting power held by the general public.

The question to be decided is whether there was sufficient evidence that those who made the false representations to

the plaintiff were agents of the defendant for that purpose. Stated more narrowly the question is whether William Fox or Blumenthal had authority from the defendant to make representations concerning the financing of Fox Metropolitan Playhouses, Inc., or Fox Northeastern Playhouses, Inc. There was no evidence that the defendant owned any stock in either of these corporations. The evidence was that it did not.

It was agreed that the record books of the defendant from January 1, 1928, to January 1, 1930, show no vote of its board of directors authorizing William Fox to acquire theatres or authorizing William Fox to act as its agent in acquiring theatres or to act as its agent in employing Blumenthal to act as an agent for the corporation in acquiring theatres, and that there is nothing in the records relating to the Fox Metropolitan or Fox Northeastern companies, and, in addition to this last, no vote ratifying any action by William Fox or Blumenthal. No other evidence was introduced which showed any action by the board of directors of the defendant touching this subject. It was agreed that Blumenthal had no official connection with the defendant.

The burden was upon the plaintiff to show that the defendant was responsible for the representations upon which he relied. He must show that these representations were either made or ratified by those having authority to bind the defendant in these particulars. *England* v. *Dearborn*, 141 Mass. 590. *Pritchard* v. *Uphams Corner Theatre Co.* 238 Mass. 441, 444. *Cashin* v. *Corporation Finance Co.* 251 Mass. 60, 62, 63. It is apparent that no actual authority or ratification of this nature was shown. The records of the defendant, to which reference has already been made, are decisive on this point.

The by-laws of the defendant gave William Fox by virtue of holding the office of president, which included that of general manager, no implied authority to negotiate for the leasing or acquisition of theatres or to make representations as to the financial responsibilities of corporations which were to assume the obligations for such leasing and in which the defendant owned no stock. Such acquisition would involve

the assumption of large financial obligations. That course of conduct manifestly was unusual and extraordinary in the management of a corporation. The president and general manager of such a corporation as the defendant has not unlimited power but is restricted to doing those things which are usual and necessary in the ordinary course of the corporate business. *DeBlois* v. *Boylston. & Tremont Corp.* 281 Mass. 498, 520. *Massachusetts Hospital Life Ins. Co.* v. *Nesson*, 286 Mass. 216, 222. *Horowitz* v.`S. Slater & Sons Inc.* 265 Mass. 143, 147, 148. *Connelly* v. *S. Slater & Sons Inc.* 265 Mass. 155, 157. *James F. Monaghan Inc.* v. *M. Lowenstein & Sons Inc.* 290 Mass. 331, 333. Am. Law Inst. Restatement: Agency, § 35, comment *b*. No greater authority can be inferred from the circumstance that William Fox held a majority of the voting shares of stock or that he held the power of domination of the corporation. *Treasurer & Receiver General* v. *Macdale Warehouse Co.* 262 Mass. 588, 592–594. *Selden Truck Corp.* v. *Selden Truck Service Co.* 257 Mass. 58. *Caskie* v. *International Railway*, 261 N. Y. 47, 55.

The evidence does not warrant a finding that either Fox or Blumenthal had implied authority to enter upon negotiations with the plaintiff such as are here disclosed or to make the representations upon which he relies. The by-laws of the defendant conferred no such authority either expressly or by implication. The directors could not delegate to Fox the entire control of the defendant because this would be inconsistent with the by-laws and with the corporation law of New York. Directors of a corporation are regarded as fiduciaries and are required to exercise their own independent judgment for the highest welfare of the corporation and its stockholders. "The functions of directors may not be abdicated." *Caskie* v. *International Railway*, 261 N. Y. 47, 55. *Continental Securities Co.* v. *Belmont*, 206 N. Y. 7, 16. *McQuade* v. *Stoneham*, 263 N. Y. 323, 328, 329. *Albert E. Touchet, Inc.* v. *Touchet*, 264 Mass. 499, 507. It is provided by § 27 of the general corporation law of New York, Laws of 1929, c. 650, § 1, that the "business of a corporation shall be managed by its board of directors . . . ."

An implied delegation of authority to an agent may arise from a course of conduct showing that a principal has repeatedly acquiesced in and adopted acts of the same kind. Am. Law Inst. Restatement: Agency, § 43. The instances of ratification of previously unauthorized acts of William Fox shown by the records of the defendant indicate, not an implied authority, but a realization that ratification was necessary to the validity of the acts. This was not sufficient, in our opinion, to warrant a finding that William Fox had authority to bind the defendant as to the matters here in issue because of an implication arising from powers previously exercised by him without dissent by the defendant. The principle invoked by the plaintiff in reliance upon *Hardin* v. *Morgan Lithograph Co.* 247 N. Y. 332, is not applicable. The case at bar falls more nearly under *James F. Monaghan Inc.* v. *M. Lowenstein & Sons Inc.* 290 Mass. 331, and cases there collected.

There was considerable testimony to the effect that stock in other theatres, and perhaps other theatres, had been acquired by the defendant. The connection of William Fox with these transactions, the precedent authority conferred upon him or the subsequent ratification of his conduct by the defendant was not made clear. There was testimony by one Rogers and testimony by the plaintiff as to statements made to him by Rogers. The latter was a vice-president of the defendant, one of its directors and its general counsel. He was also connected with the Fox Theatres Company, an important corporation organized by him in 1925. There was testimony that it had acquired theatres and that the two new corporations were its subsidiaries. There was nothing to indicate that Rogers had authority to make admissions in behalf of the defendant. Another director of the defendant in his capacity as an executive officer of the Fox Metropolitan company signed contracts respecting theatres of which the plaintiff secured leaseholds. That did not bind the defendant. He was not then acting as its director. There was testimony that employees of the defendant were working at the direction of William Fox with Blumenthal in transactions in which the

plaintiff was interested. But there was no testimony that this was authorized directly or indirectly by any vote of the directors of the defendant. Most of these general statements to the plaintiff occurred after the representations on which the plaintiff relies had been made to him.

One fundamental difficulty with the plaintiff's case. is that the representations upon which he relies relate to transactions involving the expenditure of such large sums of money by the defendant that they outstripped its ordinary and usual course of business and the representations cannot be held binding upon the defendant without some corporate action beyond what is here shown. *DeBlois* v. *Boylston & Tremont Corp.* 281 Mass. 498, 520. *Massachusetts Hospital Life Ins. Co.* v. *Nesson*, 286 Mass. 216, 222. *James F. Monaghan Inc.* v. *M. Lowenstein & Sons Inc.* 290 Mass. 331, 333.

It becomes unnecessary to consider the plaintiff's exceptions which, so far as argued, relate to damages.

The plaintiff's exceptions are overruled. The defendant's exceptions are sustained. In accordance with G. L. (Ter. Ed.) c. 231, § 122, judgment may be entered for the defendant.

*So ordered.*