Lauriat, J.
Gavin Finn (“Finn”) brought this action against GenRad, Inc. (“GenRad”), William Scheerer (“Scheerer”), Edward Zschau, Lowell Hawkinson, Adriana Stadecker, Russell Gullotti, William Antle (collectively “outside directors’), and James Lyons (“Lyons”), all of whom comprised GenRad’s board of directors (“the Board”) at all times relevant to this action. Finn alleges that the defendants breached an employment contract, engaged in deceit, and made negligent misrepresentations to him with regard to his candidacy for the position of GenRad’s President and Chief Operating Officer. The defendants have now moved for summary judgment. They contend that there was never an enforceable contract between the parties and that Finn cannot show either reasonable or detrimental reliance sufficient to support the existence of a contract by promissory estoppel, or to support his claims of deceit and negligent misrepresentation.
BACKGROUND
In 1999, Lyons announced to his fellow directors that he intended to resign as President and Chief Executive Officer of GenRad. The Board formed a special committee, headed by Scheerer, to find Lyons’ replacement. They were assisted in this task by an executive recruiting firm, which soon identified a spe *363 cific candidate, Robert Dutkowsky. The Board offered Dutkowsky the position, but in late 1999 Dutkowsky decided to pursue another opportunity and turned down the Board’s offer. In response, the Board held a special meeting on January 6, 2000. The minutes of this meeting reflect that the Board empowered Lyons to “assume responsibility for finding his successor.” The Board gave Lyons the option of offering a possible successor the position of President and Chief Operating Officer with an eye toward easing him into the CEO position at a later date. However, it is undisputed that any successor Lyons brought forward would have to be approved by the Board before he was hired.
Coincidentally, and at about this time, GenRad explored the possibility of acquiring Prescient Technologies, a wholly owned subsidiary of Stone & Webster. Lyons met Finn, the President and Chief Executive Officer of Prescient Technologies, and was impressed enough with Finn to begin speaking with him about the possibility of becoming Lyons’ successor at GenRad. Finn was interested in this possibility, in part because he knew Stone & Webster would soon divest itself of Prescient Technologies and that, consequently, his job prospects there were uncertain.
Lyons and Finn communicated about Finn joining GenRad as President and Chief Operating Officer numerous times in February and March 2000. At all times in these discussions, Lyons told Finn that his position depended on Board approval. In fact, much of the communications between the two men revolved around how to achieve that approval. Finn assessed other possible employment options during this time. He had discussions concerning future employment with officials at Spatial Technologies, the company that eventually purchased Prescient Technologies. In addition, Finn considered alternate employment opportunities with Stone & Webster.
On February 1, 2000, Lyons sent Finn a letter detailing his impressions of the character of the individual outside directors and revealing the animosity between them and himself. Lyons announced Finn as his candidate for the President and COO positions on March 14, 2000, and Finn began a series of meetings with several, but not all, of the outside directors. These interviews, conducted from March 16 through March 22, 2000, were held so that the outside directors could assess Finn’s qualifications for the position Lyons recommended. The outside directors’ responses were generally favorable but they expressed some concerns about Finn’s lack of experience and laid-back demeanor.
On March 2, 2000, the executive recruiting firm that located Dutkowsky contacted Scheerer and advised him that Dutkowsky was once again available. Scheerer shared this information with his fellow outside directors on March 14, but not with Lyons or Finn. On that same date, the outside directors agreed to reinstate their last offer to Dutkowsky. Eventually, the outside directors offered Dutkowsky the positions of Chairman, President and CEO of GenRad if he would accept by April 1, 2000. Dutkowsky accepted this offer on March 27, 2000. This acceptance was not enough to move the outside directors to inform Lyons that he need make no further efforts to find his successor. In fact, certain outside directors e-mailed Lyons concerning Finn’s candidacy for the now filled presidency as late as March 30, 2000.
In late March and early April 2000, Finn expressed concerns about the possibility of Board approval for his candidacy. He alleges, and for purposes of summary judgment the Court accepts, that Lyons reassured him that the position was his, describing Board approval as a “lock” or a “slam dunk.” In addition, Lyons sent Finn a draft offer letter on April 3, containing the proposed terms and conditions of Finn’s employment. The draft offer letter to Finn, identical to the offer letter sent to Dutkowsky, was silent concerning the length of service contemplated.
Finn, allegedly in reliance on the draft offer letter and Lyons’ reassurances of Board approval, resigned from Prescient Technologies on April 5, 2000, effective May 4, 2000. The following day, the outside directors informed Lyons that they had replaced him with Dutkowsky. Lyons informed Finn of this fact on April 9, 2000, and told him that any further discussions with GenRad should be directed to Dutkowsky. Finn recontacted Stone & Webster and found that his employment options with that company were no longer viable. In addition, Finn contacted Spatial Technologies which offered him a position that required that he relocate to Colorado. Unwilling to leave the local area, Finn found a job as President and CEO of Blue-streak.com, Inc. in July 2000.
DISCUSSION
Summary judgment will be granted where there are no genuine issues of material fact and where the record, including the pleadings and affidavits entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving parly bears the burden of affirmatively demonstrating that there are no triable issues. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The nonmoving party cannot defeat a summary judgment motion by resting on the pleadings or merely asserting disputed issues of fact. Lalonde v. Eissner, 405 Mass. 207, 209 (1989). However, for the purposes of a summary judgment, the court will review the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Ford Motor Co., Inc. v. Barrett, 403 Mass. 240, 242 (1988).
I.
The parties’ arguments demonstrate a fundamental disagreement as to what is meant by the term “GenRad.” When Finn argues that he and GenRad are con *364 tractually bound, he is asserting that Lyons had either actual or apparent authority to forge this relationship. The individual defendants dispute this interpretation, contending that only the Board could bind GenRad to an agreement with Finn. It is axiomatic that a corporation can only act through its agents. Sunrise Properties, Inc. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C., 425 Mass. 63, 66 (1997). The initial question then is which agent did GenRad empower to commit the corporation to a specific course of action. Additionally, it remains to be determined whether the actions of all GenRad’s agents in combination were necessarily in conflict.
The president of a Massachusetts corporation, such as GenRad, must be elected by that corporation’s board of directors. G.L.c. 156B, §48. Although a corporation’s board may avoid this responsibility through a contrary provision in the corporate by-laws, id., it is undisputed that GenRad did not have such a contrary provision. A board of directors may also delegate its authority by vesting explicit authority in one of its agents. Such delegations are typically to corporate officers and are generally limited to managerial functions incidental to the corporation’s day-today operations. Boston Athletic Association v. International Marathons, Inc., 392 Mass. 356, 365 (1984). A board of directors may not “delegate authority which is so broad that it enables the officer to bind the corporation to extraordinary commitments.” Bloomberg v. Greylock Broadcasting Co., 342 Mass. 542, 548 (1961). A board of directors also may not delegate its powers in transactions where there is a presumption that the board’s specific authority is required. See Kanavos v. Hancock Bank & Trust Co., 14 Mass.App.Ct. 326, 333 (1982); Stoneman v. Fox Film Corp., 295 Mass. 419, 425 (1936).
The only possible delegation of the Board’s authority to elect GenRad’s new president stems from the special board meeting that was convened on January 6, 2000, to deal with Dutkowsky’s unexpectedly rejection of the GenRad presidency. The minutes of the Board’s meeting state, in pertinent part, that:
At the request of the Board, Mr. Lyons agreed to continue as Chief Executive Officer with the title of Chairman and to assume responsibility for finding his successor. It was agreed that the desired course of action would be to find a qualified individual who would initially serve as President and Chief Operating Officer and then ultimately succeed Mr. Lyons as Chairman and Chief Executive Officer.
The plain language of the minutes does not support a view that the Board delegated authority to Lyons to hire a new president. Lyons was empowered to “find,” as opposed to “hire,” his own successor either as an alternative or an adjunct to Scheerer’s special committee. There is nothing in the minutes to suggest that the Board was bound to accept Lyons’ first choice or any subsequent candidate he might put forward. Had the Board rejected Finn outright as the new GenRad president, Lyons would not have been relieved of his obligation to find his successor. Absent his refusal to do so or a new Board mandate, Lyons would have moved on to search for a more acceptable candidate. Thus, the task assigned to Lyons was within the Board’s permissible range of delegation, since nothing Lyons could do would bind GenRad to any commitment to his chosen successor.
The undisputed actions of the Board, Lyons and Finn throughout the consideration of Finn’s candidacy supports the interpretation that Lyons did not have authority to commit GenRad to Finn. Finn agrees that Lyons informed him at all times that the GenRad presidency required Board approval. Finn and Lyons communicated regarding the obstacles they faced in securing that approval, both from the standpoint of perceived weaknesses in Finn’s qualifications and those attributable to the “venom” existing between Lyons and some of the outside directors. Finn embarked on a series of meetings with the outside directors in order to promote his candidacy. He sought reassurances from Lyons that he would receive the Board’s blessing, signaling further that he was aware that Lyons alone could not speak for GenRad in this matter. Thus, Finn has not produced sufficient evidence to raise a question of material fact concerning GenRad’s liability to him based on Lyons’ actual authority to bind the corporation.
A similar conclusion results from an analysis of GenRad’s potential liability under the theory that Lyons had apparent authority to commit the corporation to Finn. Apparent authority is “created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.” Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 745 (2000), quoting Restatement (Second) of Agency, §27 (1958).
Nor can Finn rely on Lyons’' corporate titles as evidence of his apparent authority. A corporate title is generally insufficient to create apparent authority. Kanavos v. Hancock Bank & Trust Co., 14 Mass.App.Ct. 326, 332 (1982). GenRad’s words and conduct never wavered from the clear message that Lyons, despite being Chairman, President and CEO, could not hire Finn by himself. Similarly, the well known limits on Lyons’ powers distinguishes this case from Linkage Corporation v. Trustees of Boston University, 425 Mass. 1 (1997). There, the court found that a university vice president’s apparent authority was based on prior course of dealing between the parties and the vice-president’s “virtual autonomy” in supervising the university’s contacts with the plaintiff. Linkage Corporation, 425 Mass. at 16. Lyons did not convey this type of autonomy to Finn. To the contrary, Lyons discussed at length the problems that he and *365 Finn would have to overcome before they could accomplish their objective. Thus, there is no evidence sufficient to raise a material question of fact on the issue of GenRad’s grant of apparent authority in this matter since the corporation, speaking and acting through all its directors (including Lyons), specifically denied such authority existed.
Finn also cannot establish Lyons’ apparent authority through the combination of the draft offer letter and Lyons’ repeated assurances that Board approval was a “slam dunk” or a “lock.” Finn points to Griesi v. Atlantic General Hospital Corporation, 756 A.2d 548 (Md. 2000), for the principle that such reassurances are sufficient to bind a corporation to the representations of one of its directors. However, Griesi is factually distinct, in that the director in question, an interim president and CEO, informed the potential employee that he would contact the employee after he had received board approval for the hire. Upon that next contact with the potential employee, the director extended an oral offer with the information that the hospital board’s chairmen had approved the offer. The director later reassured the employee that the full board had indeed approved his employment. Griesi, 756 A.2d at 550-51. The Court in Griesi determined that these facts raised a jury question because it could be found that the employee reasonably relied on such “positive and unequivocal representations of an employment opportunity and that he (the director) had authority or apparent authority, to make such an offer . . .” Griesi, 756 A.2d at 556. No such positive and unequivocal representations have been presented in the record before this court. Lyons’ letter offer was specifically prospective, as it was part of the package that Lyons hoped would get Board approval. Additionally, the words “slam dunk” and “lock” do not rise to the level of the assurances in Griesi that any director, other than Lyons himself, had committed to Finn or that the Board had actually approved him.
II.
Having concluded that only the Board could speak for GenRad in this matter and that nothing Lyons did or said leads to any contrary conclusion, Finn’s claims can be examined in turn. To demonstrate that he had a contract with GenRad, Finn must present evidence that there is an “agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement.” Situation Management Systems, Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000). Although not all the terms of such an agreement need be precisely specified, the parties must have progressed beyond “imperfect negotiations.” Id. The record reveals that the only agreement Finn had was with Lyons. The terms of that agreement consisted of Lyons putting Finn before the Board as a candidate for the position of President and COO. There was no agreement between Finn and GenRad as embodied by the Board. Therefore, Finn can not prevail on a claim that GenRad breached the parties’ employment contract and the defendants are entitled to summary judgment on Finn’s breach of contract claim.
III.
To prevail on a claim for breach of contract based on principles of promissory estoppel, Finn must present evidence that GenRad (1) made a representation, or conduct amounting to a representation, intended to induce Finn to follow a course of conduct; (2) that Finn committed an act or failed to commit an act as a result of that representation; and (3) that Finn suffered detriment as a result of his reasonable reliance on that representation. See Clickner v. City of Lowell, 422 Mass. 539, 544 (1996). The plaintiff has the “heavy burden” of establishing that all three of these elements are met in order to prevail on an estoppel theory. Id.
GenRad’s only representations to Finn were that the Board would consider him for the position of President and COO. In doing so, the only course of conduct GenRad intended Finn to follow was to engage in negotiations to that end. This conduct does not constitute an act or omission that resulted in Finn’s possible detriment. Finn does not claim that it is. He suggests that Lyons pressured him to resign from Prescient Technologies in order to attend GenRad functions as the new president. Finn contends that Lyons induced him to quit in early April since Lyons knew that he wanted to give Prescient Technologies at least three weeks notice before leaving. Finn states he would not have resigned but for Lyons’ assurances that his election was certain and his receipt of draft offer letter, and that this resulted in detriment to Finn when he did not get the job.
Finn must introduce evidence sufficient to raise a juiy question as to whether his reliance on Lyon’s assurances was reasonable. A clear, unambiguous promise is a necessary prerequisite to reasonable reliance. Upton v. JWP Businessland, 425 Mass. 756, 760 (1987). “A well founded hope” is not enough to support reasonable reliance. Hall v. Horizon House Microwave, Inc., 24 Mass.App.Ct. 84, 94 (1987). In addition, the promise relied on must operate in a contractual sense as a substitute for consideration in an otherwise valid, enforceable contract. See Rhode Island Hospital Trust v. Varadian, 419 Mass. 841, 849-50 (1995). Lyons’ assurances and offer letter do not satisfy these requirements because Lyons did not have the authority, and Finn knew that he did not have the authority, to conclude an employment contract with him. Absent that authority, Lyons’ remarks and letter only amount to a well founded hope that Finn would be the GenRad president. Thus, Finn cannot establish that he reasonably relied on representations by either Lyons or GenRad, and summary judgment is allowed for the defendants on Finn’s promissory estoppel claim.
*366 IV.
To prevail on a claim for negligent misrepresentation, Finn must show that GenRad (1) in the course of its business; (2) supplied false information for his guidance; (3) in his business transactions; (4) causing and resulting in Finn’s pecuniary loss; (5) by his justifiable reliance upon the information; and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information to Finn. Golber v. BayBank Valley Trust Company, 46 Mass.App.Ct. 256, 257 (1999). Claims seeking relief based on allegations of deceit require similar false statements of material facts. Zimmerman v. Kent, 31 Mass.App.Ct. 72, 77 (1991). Therefore, these causes of action will be considered together.
Finn can not prevail on these claims because Gen-Rad did not supply him with false information. “A statement on which liability for misrepresentation may be based must be one of fact, not of expectation, estimate, opinion, or judgment.” Zimmerman, 31 Mass.App.Ct. at 79. Lyons’ statements, expressing no more than a well founded hope, do not rise to the level of facts sufficient to support claims for negligent misrepresentation and deceit.
With respect to the negligent misrepresentation claim, Finn contends that Lyons had superior knowledge such that he knew or should have known that the Board would not approve Finn for the GenRad presidency. The undisputed evidence before the court delineates a Board split into factions, distrustful of each other in almost all respects, and in some cases engaged in personal vendettas. In addition, it is clear that both Lyons and Finn were well aware of these circumstances. The court concludes that Lyons did not, in this Borgia palace atmosphere, have any superior knowledge of the Board’s likely actions, nor that he could have reliably gained that knowledge with a proper inquiiy. Therefore, Finn cannot sustain his actions against the defendants for deceit and negligent misrepresentation and judgment must enter for the defendants as a matter of law on these claims.
ORDER
For the foregoing reasons, Defendants’ Motion For Summary Judgment Dismissing The Complaint In Its Entirety is ALLOWED.