# United States Court of Appeals
## For the First Circuit

No. 05-1832

PAUL E. PLATTEN; THOMAS P. FLANNERY; BRUCE N. PFAU,

Plaintiffs, Appellants,

v.

HG BERMUDA EXEMPTED LIMITED; HG (BERMUDA) EXEMPTED
PARTNERSHIP; HAY GROUP INVESTMENT HOLDING B.V.;
HAY ACQUISITION COMPANY I, INC.; HAY GROUP, INC.,

Defendants, Appellees,

CHRIS R. MATTHEWS,

Defendant,

PNC BANK, N.A.,

Trustee.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Selya and Lynch, Circuit Judges,
and Smith,[*] District Judge.

Robert D. Cohan, with whom Cohan Rasnick Myerson LLP was on
brief, for appellants.
Michael I. Verde, with whom Ruth Dowling, Palmer & Dodge LLP,

---

[*]     Of the District of Rhode Island, sitting by designation.

Michael F. Gallagher, and Katten Muchin Rosenman LLP were on brief, for appellees HG Bermuda Exempted Limited, HG (Bermuda) Exempted Partnership, and Hay Group Investment Holding B.V.

W. Allen Woolley, with whom Foley Hoag LLP, Michael P. Boudett, P. Renée Wicklund, and Kirkland & Ellis LLP were on brief, for appellees Hay Acquisition Company I, Inc. and Hay Group Inc.

————————————

February 6, 2006

————————————

**LYNCH**, **Circuit Judge**.  This multi-issue appeal arose out of what ought to have been a straightforward contract dispute brought in a court of appropriate jurisdiction.

Plaintiffs Paul Platten, Thomas Flannery, and Bruce Pfau, who are former partners of HG (Bermuda) Exempted Partnership ("Partnership"), allege that the Partnership illegitimately withheld termination distributions the three men believed they were owed by falsely claiming that they had violated their non-competition obligations.  In seeking redress for this alleged wrong, plaintiffs could have brought their contract claims against the Partnership's successor-in-interest, HG (Bermuda) Limited ("HG Limited"),[1] in Bermuda, where HG Limited was organized and has its usual place of business and in accordance with whose laws the parties agreed to settle their contract disputes.  Instead, they sought to reach HG Limited in Massachusetts.  To do so, they had to bring in a number of other defendants -- who were not parties to the agreement -- under close to a dozen tenuous legal theories.  As a result, we discuss the Massachusetts law of breach of contract, civil conspiracy, and negligent misrepresentation, as well as seven other state and federal claims.

---

[1]  The Partnership dissolved and was reconstituted in 2000 as HG Limited, which plaintiffs incorrectly identify in their complaint as "HG Bermuda Exempted Limited."  The parties agree that the Partnership no longer exists, so we treat it as the same entity as HG Limited for the purpose of this litigation.

The district court dismissed plaintiffs' action on various grounds: for some claims, failure to establish personal jurisdiction, see Fed. R. Civ. P. 12(b)(2), and for others, failure to state a claim upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6). We affirm, concluding that plaintiffs have stated no claims against the corporate parties as to whom there may be personal jurisdiction in Massachusetts. As to the one other entity against which plaintiffs do state claims, plaintiffs did not meet their burden of proving that there is personal jurisdiction over the relevant defendant in Massachusetts, as there would have been in Bermuda.

## I.

We recite the facts as they appear in plaintiffs' original verified complaint and in their subsequent affidavits that were admitted into the record by the district court. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002); Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). We also describe briefly, where relevant, defendants' competing factual allegations, but rely on them only to the extent that they are uncontradicted. Mass. Sch. of Law, 142 F.3d at 34.

A.      Background

Plaintiffs Platten, Flannery, and Pfau are former employees of Hay Group Inc. ("HGI"), an international consulting

-4-

business incorporated in Pennsylvania.[2] HGI is a wholly owned subsidiary of Hay Acquisition Company I, Inc. ("Hay Acquisition"), a Delaware corporation. In turn, Hay Acquisition is a wholly owned subsidiary of Hay Group Investment Holding B.V. ("Hay BV"), a Netherlands corporation, which itself is a wholly owned subsidiary of HG Limited, a Bermudan corporation.

Plaintiffs allege that the five corporations, together with Chris Matthews, operated as an "association-in-fact" known as the "Hay Group," in which the operations of the corporations and the Partnership were intermingled and controlled by Matthews. Matthews was the Chief Executive Partner of the Partnership and became the Chief Executive Officer of HG Limited when the Partnership was reconstituted as such in 2000. At all times relevant to the litigation, Matthews was also the sole stockholder of Hay BV, the Chairman of the Board and President of HGI, and the Chairman of the Board and Chief Executive Officer of Hay Acquisition.

Platten was hired in 1989 as a Senior Executive Compensation Consultant in HGI's Boston office. He was promoted in 1990 to Manager of that office and in 1998 to East Operations Director, a position that he held until it was eliminated, and his employment with HGI terminated, in 1999. In 1997, Platten also became a member of the Partnership Management Committee. During

---

[2] Defendants Hay Acquisition and HGI allege that HGI is actually a Delaware corporation.

-5-

the entirety of his tenure at HGI, Platten worked out of the Boston office, where he received, often by phone and at least twice in person, directions from Matthews about both HGI and Partnership business.

Co-plaintiff Flannery was hired in 1981 as an Associate in the Chicago office of HGI. He subsequently transferred to other HGI offices, including those in Kansas City, St. Louis, and Singapore, where he served in various capacities, including as General Manager. He was based in HGI's Dallas office at the time he left the consulting practice voluntarily in 1999.

The third plaintiff, Pfau, was hired in 1990 as a Senior Consultant in HGI's New York office and was eventually promoted to Managing Director of the Research for Management division. His employment with HGI, which was based solely in New York, terminated voluntarily by agreement in 1999.

During the course of their employment with HGI, plaintiffs were each required to enter into a partnership agreement ("Agreement") with the Partnership. Neither HGI nor Hay Acquisition was a party to the Agreement; the Agreement itself says that it was made "by and among" the initial and continuing partners of the Partnership. The Agreement specifies that Bermuda law governs its interpretation and enforcement.

By the terms of the Agreement, all partners, including the plaintiffs, were required to make periodic capital

contributions to the Partnership.  Upon termination of employment and absent some other agreement between the parties, a partner was entitled, on the third anniversary of withdrawal from the Partnership, to a termination distribution comprised of the sum of the partner's capital contributions and his share of Partnership assets.  The distribution did not have to be paid in full, however, if Matthews and the Partnership Management Committee determined that the partner had been terminated for cause or (most relevant here) that the partner's termination was "accompanied by" the violation of the Agreement's non-competition clause.  In that event, the partner's termination distribution could be reduced to the amount of his capital contributions and paid out over a five-year period from the date of termination.  It is this provision of the Agreement that is at the center of this dispute.

After leaving HGI, plaintiffs accepted employment with other consulting groups -- Platten with the Boston office of PricewaterhouseCoopers, LLC, and then with the Boston office of Watson Wyatt & Company; Flannery with the Boston office of Arthur Anderson, LLP; and Pfau with the New York office of Watson Wyatt & Company.  Each plaintiff maintains that his actions after leaving HGI were consistent with the Agreement's non-competition obligations.

In 2002, each plaintiff made written inquiries to HG Limited, the Partnership's successor, about his termination

distribution. In turn, each received, among other correspondence from HG Limited, a September 4, 2002 letter signed by Matthews. The letter stated that a former partner's termination distribution was tethered to his non-competition obligations and asked each recipient to prove that he was not in violation of those obligations. Each plaintiff responded by letter that he had not broken the non-competition clause. On September 26, 2002, counsel for HG Limited informed each plaintiff in writing that he was not entitled to the immediate and full payment of his termination distribution because he had failed to respect the non-competition clause.

Plaintiffs allege that except with regard to termination distributions, merely working for another consulting group was generally not considered by the "Hay Group" to be a violation of a partner's non-competition agreement. They further allege that accusing them of violating their non-competition obligations was merely a tactic the Partnership used to wrongfully deny them their termination distributions. Matthews, they maintain, orchestrated this scheme to the benefit of the existing partners, whose partnership bonuses would increase as less money was being paid out to their former colleagues. Plaintiffs allege that the benefits would also trickle down to the "Hay Group" entities, including HGI and Hay Acquisition, which would have more available cash and a reduced need for borrowing to fund their operations.

B.        Relevant Procedural History

Plaintiffs brought suit in the Superior Court for Suffolk County, Massachusetts, on June 19, 2003. In addition to the Partnership and its successor-in-interest, HG Limited, plaintiffs named three other corporate defendants -- Hay BV, Hay Acquisition, and HGI -- and one individual defendant, Chris Matthews.

Plaintiffs asserted a total of eleven counts in their complaint. Against all defendants, plaintiffs claimed breach of contract, breach of implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, negligence, breach of fiduciary duty, unjust enrichment, unfair and deceptive practices, civil conspiracy, and violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961-68. Plaintiffs also asserted a claim of interference with contractual relations against Hay BV, Hay Acquisition, and HGI.

Along with their verified complaint, plaintiffs filed an ex parte motion for an attachment on trustee process of the goods, effects, or credits of the defendants in the amount of $843,329, the sum of the termination distributions that plaintiffs claimed were due. Finding "a reasonable lik[e]lihood that the plaintiff[s] will recover judgment," the superior court granted the motion and issued an ex parte order of attachment. Plaintiffs subsequently moved for a preliminary injunction, requesting an additional double of that amount because of the mandatory treble damages provided

under the RICO statute. This motion was denied by the court on June 25, 2003.

The defendants removed the action on July 15, 2003 to the Massachusetts federal district court on the basis of complete diversity of the parties and, as to the RICO Act claim, federal question jurisdiction. On August 8, 2003, Hay Acquisition and HGI ("Domestic Defendants") filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The district court on June 16, 2004 granted the motion with respect to all claims against the Domestic Defendants except for three: breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. On the first two claims, the court held that, because of the choice of law provision in the partnership Agreement, the Domestic Defendants needed to have shown that the claims would have been meritless under Bermuda, not Massachusetts, law.

On June 25, 2004, plaintiffs moved to amend their complaint, seeking to restore the dismissed counts by adding allegations of fraudulent inducement that they argued would cure the defects in their claims for fraud, negligent misrepresentation, and RICO Act violation. Their amended complaint further sought to clarify that the claims for interference with contractual relations and conspiracy were pleadings in the alternative, to be considered only in the event that Hay Acquisition and HGI were found to be separate entities from the Partnership. This motion was denied as

futile by the district court on November 23, 2004. Plaintiffs moved for reconsideration, which was denied on January 14, 2005.

On July 8, 2004, the Domestic Defendants moved for the court to reconsider its denial of the motion to dismiss with respect to the remaining three contract claims against them. On December 21, 2004, the district court, holding that Massachusetts law applied after all, granted the motion for reconsideration and dismissed the breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment claims against Hay Acquisition and HGI. On December 29, 2004, the plaintiffs filed a motion for reconsideration of the dismissal of the contractual relations, negligence, and civil conspiracy claims against Hay Acquisition and HGI, which the court denied on January 13, 2005. This left plaintiffs with no surviving claims against the Domestic Defendants.

Meanwhile, on August 21, 2003, the Partnership, HG Limited, and Hay B.V. ("Offshore Defendants") filed a separate motion to dismiss for lack of personal jurisdiction and insufficient service of process. See Fed. R. Civ. P. 12(b)(2), (5). Plaintiffs filed their opposition to the motion on October 6, 2003, and, after defendants filed their reply, plaintiffs moved on December 10, 2003 for leave to file a response and a second affidavit of Platten ("Platten Affidavit II"). The district court denied plaintiffs' motion on December 23, 2003. On January 23,

-11-

2004, plaintiffs moved for the court to reconsider its denial of their motion to file Platten Affidavit II; the court denied that motion on February 18, 2004.

The district court granted the Offshore Defendants' motion to dismiss for lack of jurisdiction on June 15, 2004. In response, plaintiffs moved on June 25, 2004 for the court to reconsider its dismissal of HG Limited or, in the alternative, to defer ruling pending jurisdictional discovery.[3] That motion was denied on November 18, 2004.

On April 28, 2005, plaintiffs voluntarily dismissed, with prejudice, all of their claims against Chris Matthews, the sole individual defendant.

Plaintiffs then initiated this appeal.

## II.

Plaintiffs challenge a number of district court rulings, including the following: (1) its dismissal of ten of the plaintiffs' claims against the Domestic Defendants, Hay Acquisition and HGI, for failure to state a claim upon which relief can be granted;[4] (2) its refusal to admit into evidence Platten Affidavit II; (3) its dismissal of the claims against HG Limited for lack of

---

[3]   Plaintiffs did not seek reconsideration of the court's dismissal of Hay B.V. for lack of jurisdiction.

[4]   Plaintiffs do not challenge the district court's dismissal of their negligence claim.

-12-

personal jurisdiction; and (4) its denial of plaintiffs' request for jurisdictional discovery.

A.      Rulings Pertaining to the Dismissal of Claims Against HGI and Hay Acquisition

Plaintiffs first claim error in the district court's dismissal of their claims against the Domestic Defendants pursuant to Fed. R. Civ. P. 12(b)(6).  The crux of all the claims is that HG Limited wrongfully failed to pay plaintiffs the full amount of their termination distributions and that, as a result, liability can be imposed upon Hay Acquisition and HGI, which are its third- and fourth-tier subsidiaries, respectively.

We review de novo and may affirm on any ground supported by the record.  See Diva's Inc. v. City of Bangor, 411 F.3d 30, 40, 43 (1st Cir. 2005).  We accept as true all well-pleaded facts alleged by plaintiffs in their complaint and draw in their favor all reasonable inferences fitting their stated theories of liability.  See Morales-Villalobos v. Garcia-Llorens, 316 F.3d 51, 52-53 (1st Cir. 2003).  "[T]he threshold [for stating a claim] may be low, but it is real."  Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).  Thus, plaintiffs are obliged to set forth in their complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory."  Id. at 515.

1.   Dismissal of Breach of Contract, Breach of
     Implied Covenant of Good Faith and Fair Dealing,
     and Unjust Enrichment Claims

Plaintiffs asserted claims of breach of contract (i.e. the Agreement), breach of an implied covenant of good faith and fair dealing, and unjust enrichment against the Domestic Defendants.

Plaintiffs concede that neither HGI nor Hay Acquisition is a signatory to the Agreement.  They allege, however, that Offshore Defendant HG Limited, as the Partnership's successor, is bound by the Agreement; that the Domestic and Offshore Defendants comprise a single enterprise, known as the "Hay Group"; that all the organizations in the enterprise have intermingled operations and finances; and that the entire enterprise is pervasively controlled by Chris Matthews and the Partnership.  They thus argue that the corporate form should be disregarded so as to allow them to hold the Domestic Defendants liable for the Partnership's, now HG Limited's, alleged misdeeds.

We apply, as did the district court and the parties, Massachusetts law.[5]  "Under Massachusetts common law, disregarding

---

[5]   The district court initially denied the Domestic Defendants' motion to dismiss the breach of contract and breach of implied covenant claims, on the ground that defendants neglected to show that plaintiffs failed to state a claim under Bermuda law.  It also initially denied defendants' motion to dismiss the unjust enrichment claim.  Subsequently, on defendants' motion, the court reconsidered its rulings and dismissed the three claims, concluding that "the viability of [all three] claims . . . is dependent on" plaintiffs' corporate disregard theory, and that under Massachusetts law, plaintiffs' allegations "are insufficient to

-14-

the corporate form is permissible only in rare situations." United Elec., Radio and Mach. Workers v. 163 Pleasant St. Corp. (Pleasant St. I), 960 F.2d 1080, 1091 (1st Cir. 1992) (citing Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 15-16 (1st Cir. 1985)).  In fact, "Massachusetts has been somewhat more 'strict' than other jurisdictions in respecting the separate entities of different corporations." Birbara v. Locke, 99 F.3d 1233, 1238 (1st Cir. 1996) (quoting My Bread Baking Co. v. Cumberland Farms, Inc., 233 N.E.2d 748, 752 (Mass. 1968)) (internal quotation marks omitted).

My Bread, the seminal Massachusetts case on the corporate disregard doctrine, holds that the presumption of corporate separateness may be overcome only "in rare particular situations in order to prevent gross inequity." 233 N.E.2d at 752.  In determining whether circumstances warrant the use of this "rare" measure, we undertake an inquiry into the actual nature of the corporate interrelationship to evaluate whether the "Pepsi-Cola

---

show that the corporate form of the defendants should be disregarded . . . , particularly where there is no allegation as to confusion as to the identity of contracting parties." Plaintiffs do not appeal the court's choice-of-law determination.
    "Where 'there is at least a reasonable relation between the dispute and the forum whose law has been selected by the parties, we will forego an independent analysis of the choice-of-law issue and apply' the state substantive law selected by the parties." Fed. Ins. Co. v. Raytheon Co., 426 F.3d 491, 496 n.2 (1st Cir. 2005) (quoting Merchs. Ins. Co. of N.H. v. U.S. Fid. & Guar. Co., 143 F.3d 5, 8 (1st Cir. 1998)) (internal quotation marks omitted).

-15-

factors" militate in favor of disregarding the corporate form. These factors are:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

Attorney Gen. v. M.C.K., Inc., 736 N.E.2d 373, 380 n.19 (Mass. 2000) (citing Pepsi-Cola, 754 F.2d at 14-16).

In support of their corporate disregard theory, plaintiffs allege the following in their complaint: (1) Matthews served in multiple roles, including as Chief Executive Partner of the Partnership, Chairman of the Board and President of HGI, and Chairman of the Board and CEO of Hay Acquisition; (2) surplus profits earned by HGI "are siphoned upward to the Partnership for distribution to the partners as bonuses"; (3) the partnership Agreement prevented partners from competing with any of the "Hay Group" entities, and HGI has sought to enforce the non-compete obligation; and (4) the "Hay Group" held itself out as one "professional services firm" on its website.  They further allege:

> All managerial decisions, even extending to the local level, were made by Matthews and the Partnership Management Committee.  From time to time, at least twice, Matthews came to the Boston office to review local financial

-16-

performance and to review progress on product development. He frequently supervised performance and profitability of the Boston office and other local offices acting as head of U.S. operations. Matthews also regularly placed telephone calls to Platten in Boston wherein he would give [Platten] instructions on management matters relating to the Boston office and they would discuss the Boston office's monthly performance, staffing issues and collection efforts. The Boston office had at least 100 clients located in Massachusetts.

Taken as true, these allegations do not meet the standard for disregarding the corporate form.[6]

The circumstances here closely track those in Birbara, 99 F.3d 1233, in which we vacated a jury verdict on the ground that the evidence was insufficient to justify piercing the corporate veil. Here, as in Birbara, there is insufficient showing of confused intermingling or pervasive control. That Matthews (and Platten) sometimes acted on behalf of the Partnership and other times on behalf of its subsidiaries "is to be expected when individuals serve as directors for both a parent and its subsidiary." Id. at 1239-40. Plaintiffs themselves acknowledge that Matthews was "acting as head of U.S. operations" when he supervised the Boston office's performance. "It is also to be

_____

[6] Plaintiffs make a few other allegations that go to Matthews' "pervasive control" of the "Hay Group." But, as the district court stated, "plaintiffs' insistence upon referring to each and all of the corporate defendants by the broad collective term 'Hay Group' . . . makes it difficult . . . to decipher who did what and how, for the purpose of determining whether there is a relationship of control, and not simply of cooperation, among the Hay entities."

-17-

expected that when a subsidiary company profits, the parent company" -- in this case, the Partnership and its partners -- "will as well." Id. at 1240.

Despite their allegations of intermingling, plaintiffs have never alleged that they were confused about the identity of the legal entity with which they were contracting.[7] Indeed, the allegations are insufficient to show any "fraudulent or injurious consequence of the intercorporate relationship." Id. at 1238 (quoting My Bread, 233 N.E.2d at 752). "Plaintiffs were never misled about which corporate entity . . . was obligated to them or was dealing with them." Id. at 1240. They acknowledged that their Agreement was with the Partnership and clearly understood that the Partnership was responsible for the payment of the distributions. In fact, Platten was once a member of the Partnership Management Committee that oversaw the distribution payment scheme.

Ultimately, plaintiffs do not allege, and the circumstances do not lead to an inference of, any gross inequity that would argue in favor of overriding the presumption of

_____

[7] Defendants argue that Massachusetts courts do not pierce the corporate veil in contract cases, "because the parties to contractual relationships choose with whom to deal and can protect themselves through bargaining." See Birbara, 99 F.3d at 1238 (noting that "[w]e have found no Massachusetts Supreme Judicial Court case applying the veil piercing doctrine in a contract case" and that some courts and commentators have declined to apply the corporate disregard doctrine in contract cases, but declining ultimately to resolve the issue). To resolve this case, we need not decide the availability of the corporate disregard doctrine in Massachusetts contract cases.

-18-

corporate separateness. See Commonwealth v. Beneficial Fin. Co., 275 N.E.2d 33, 91 (Mass. 1971) (courts will only look through the corporate veil to "accomplish . . . essential justice"); My Bread, 233 N.E.2d at 752 (limiting the application of the corporate disregard doctrine only to "rare particular situations in order to prevent gross inequity"); see also Birbara, 99 F.3d at 1239 (collecting sources). Plaintiffs would not have been in the position they are in now if they had sought relief directly from HG Limited by suing it in Bermuda. Mere inconvenience is simply not a sufficient ground for disregarding the corporate form.

Since Hay Acquisition and HGI are entities separate from HG Limited and are not parties to the Agreement, they cannot be held liable for breach of contract.[8] "Having concluded that no contract exists, there can be no derivative implied covenant of good faith and fair dealing applicable to these parties." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 229 (1st Cir. 2005). Also, because the allegations are not sufficient to show that they were beneficiaries to the contract, the Domestic Defendants cannot be held liable for unjust

[8] Plaintiffs also argue that the district court erred in failing to follow the law of the case as established by the Massachusetts Superior Court, which had determined, in granting plaintiffs' ex parte order of attachment, that there was "a reasonable lik[e]lihood that the plaintiff[s] will recover judgment" on their breach of contract claim. The law of the case doctrine, however, does not apply to tentative or preliminary rulings. See Harlow v. Children's Hosp., 432 F.3d 50, 55 (1st Cir. 2005) (noting that interlocutory orders do not constitute law of the case).

-19-

enrichment. In any event, Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment. See, e.g., Zarum v. Brass Mill Materials Corp., 134 N.E.2d 141, 143 (Mass. 1956) ("The law will not imply a contract where there is an existing express contract covering the same subject matter."). We affirm the district court's dismissal of these three claims against the Domestic Defendants.

### 2. Dismissal of Interference with Contractual Relations and Civil Conspiracy Claims

Plaintiffs next contest the district court's dismissal of their claims against HGI and Hay Acquisition for interference with contractual relations and civil conspiracy.

We dispose first of plaintiffs' tortious interference claim. Under Massachusetts common law, "[i]n an action for intentional interference with contractual relations, the plaintiff must prove that: (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." G.S. Enters., Inc. v. Falmouth Marine, Inc., 571 N.E.2d 1363, 1369-70 (Mass. 1991) (citing United Truck Leasing Corp. v. Geltman, 551 N.E.2d 20, 21 (Mass. 1990)).

Plaintiffs' principal argument on appeal is that the Domestic Defendants, "by and through Matthews, took actions which induced the Partnership to break the Agreement." In support of

-20-

this theory, they rely on nothing more than conclusory allegations that Matthews controlled the various "Hay Group" entities, that he acted with improper motives to retain income for himself and the "Hay Group," and that he knew, or should have known, that the plaintiffs' termination distributions could not be rightfully withheld. Taking these allegations as true, plaintiffs still cannot make out a claim for interference of contract against the Domestic Defendants based on their theory of liability.

Under Massachusetts law, in evaluating "whether the acts and intent of natural persons, be they officers, directors or employees, can be treated as the acts and intent of the corporation itself," Beneficial Fin., 275 N.E.2d at 77, a court must examine whether those natural persons have "been vested with the authority to act on behalf of the corporation in the sphere of corporate business in which he commits the [alleged wrongful] act," id. at 80 (applying this test to a question of criminal liability, but deriving the test from civil and criminal cases). The record lacks any allegation or fact by which a reasonable inference can be drawn that Matthews was acting in the capacity and within the authority of his positions at Hay Acquisition and HGI when he allegedly "interfered" with the Partnership's contractual relationship with the plaintiffs. See, e.g., Stoneman v. Fox Film Corp., 4 N.E.2d 63, 66 (Mass. 1936) (noting that the president of a corporation "has not unlimited power but is restricted to doing those things

-21-

which are usual and necessary in the ordinary course of the corporate business," and holding that, where the president committed wrongs while acting beyond the scope of his authority, the corporation is not civilly liable for resulting injuries). Moreover, as the district court intimated, plaintiffs essentially were hoisted by their own petard: crediting their allegation that all the "Hay Group" entities constituted one enterprise, "it seems that the plaintiffs seek to hold the defendants liable for interfering with their own contract"; "[t]here is no such tort."[9]

Similar problems beleaguer plaintiffs' civil conspiracy claim. They allege that Matthews "organized and orchestrated" a scheme by which employees of HGI would be invited to join the Partnership, required to make substantial capital contributions with promises of payment of termination distributions, and subsequently denied their distributions by false claims of violations of the non-competition obligations.

"For liability to attach on this basis, there must be, first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and,

---

[9]     Plaintiffs argue that the court cannot decide that the defendants constitute one entity in dismissing plaintiffs' interference and conspiracy claims, while refusing to treat them as one entity in dismissing plaintiffs' contract claims. But there is nothing inconsistent about the court's reasoning: the court evaluated the pleading requirements particular to each claim, including the heightened pleading requirements attendant to the corporate disregard doctrine, and concluded that plaintiffs failed to meet them.

second, proof of some tortious act in furtherance of the agreement." Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994). Plaintiffs make no factual allegations supporting the conclusion that the Domestic Defendants engaged in a common design or agreement with the Partnership to do a wrongful act; to the contrary, plaintiffs' allegation is that all the defendants comprise a single corporate enterprise. No civil conspiracy claim can lie under plaintiffs' theory because an entity cannot conspire with itself. There is also a risk in plaintiffs' argument of confusing a family relationship among corporations with a conspiracy; all that is shown here is a family relationship, and that is insufficient on its own to support a conspiracy claim. Cf. Gilbuilt Homes, Inc. v. Cont'l Homes of New Eng., 667 F.2d 209, 210 (1st Cir. 1981) (holding that "a vague reference to 'inter-family relationships'" was not enough to state a claim for conspiracy under Section 1 of the Sherman Act, 15 U.S.C. § 1). The district court properly dismissed the civil conspiracy claim.

### 3. Dismissal of Fraud, Negligent Misrepresentation, and RICO Act Claims

Plaintiffs contest the district court's dismissal of their fraud, negligent misrepresentation, and civil RICO Act claims against the Domestic Defendants.

The district court dismissed the three claims on the ground that plaintiffs failed to allege that they relied on the fraudulent misrepresentation or that their injuries stemmed from

-23-

such reliance.  On appeal, plaintiffs essentially concede that at the time the district court considered the claims, they had not made allegations sufficient to support them.  They suggest that their success on appeal turns on the outcome of our review of the district court's November 23, 2004 denial of plaintiffs' motion to amend their complaint to cure acknowledged deficiencies in their original pleadings.  Plaintiffs attached a copy of their proposed amended complaint to that motion; the court determined the motion was futile.

We review the denial of a motion to amend for abuse of discretion.  See Hatch v. Dep't for Children, Youth, & Their Families, 274 F.3d 12, 19 (1st Cir. 2001).  Within that standard, pure questions of law are reviewed de novo.  Since denial of plaintiffs' motion as futile would be appropriate if the amended complaint still failed to state a claim sufficient to survive a motion to dismiss, our review in this instance is, for practical purposes, identical to review of a Rule 12(b)(6) dismissal based on the allegations in the amended complaint.  See id.

Under Massachusetts law, to make out a claim for fraud, plaintiffs must show that the Domestic Defendants made a false representation of a material fact with knowledge of its falsity for purposes of inducing the plaintiff to act thereon, and that the plaintiff actually relied on the representation.  See Slaney v. Westwood Auto, Inc., 322 N.E.2d 768, 779 (Mass. 1975).  For a claim

for misrepresentation, plaintiffs must demonstrate that the Domestic Defendants (1) made false statements of material fact (2) to induce plaintiffs to enter into the Agreement, and (3) that they reasonably relied on those statements to their detriment. See Rodowicz v. Mass. Mut. Life Ins. Co., 192 F.3d 162, 175 (1st Cir. 1999) (citing Zimmerman v. Kent, 575 N.E.2d 70, 74 (Mass. App. Ct. 1991)). Both causes of action, then, require plaintiffs' reliance on defendants' representations.

In their proposed amended complaint, plaintiffs alleged that they were "induced to enter into the Agreement by [certain] representations made in the Agreement," and that two individuals, Ken Martin and Jim Williams -- each of whom was a partner in the Partnership -- made "representations" in person or by phone as to the meaning of the non-competition provision of the Agreement.

These allegations do not suffice to hold Hay Acquisition and HGI liable for the fraud and misrepresentation claims. After all, plaintiffs did not allege any justified reliance on the misrepresentations. In fact, they stated that they entered into the Agreement because it was "a condition of employment with the Hay Group." And, as the district court pointed out, their complaint states that they continued to demand their termination distributions even after some of the alleged misrepresentations were made.

As to the civil RICO Act claim, it fails because plaintiffs never alleged proximate cause between defendants' wrongful conduct and plaintiffs' injuries. As the district court observed, even if the Domestic Defendants can be held responsible for misrepresentations by mail or wire, plaintiffs did not rely on those misrepresentations. Therefore, their injuries, if proven, come not from those misrepresentations, but from HG Limited's alleged breach of the Agreement by failing to pay the three men their termination distributions. See George Lussier Enters., Inc. v. Subaru of New Eng., Inc., 393 F.3d 36, 51 (1st Cir. 2004) ("Section 1964(c) of [18 U.S.C.] requires that the defendant's specified acts of racketeering were the proximate cause of the plaintiffs' injuries.").

Because the allegations in plaintiffs' proposed amended complaint would have been insufficient to make out fraud, negligent misrepresentation, and RICO Act claims against the Domestic Defendants, the district court did not abuse its discretion in denying the motion to amend the complaint as futile. Nor did the district court err in dismissing the underlying substantive claims under Fed. R. Civ. P. 12(b)(6).

4. Dismissal of Plaintiffs' Remaining Claims Against the Domestic Defendants

The remainder of plaintiffs' claims against the Domestic Defendants are plainly meritless, and we quickly dispose of them.

Plaintiffs argue that the district court erred in dismissing the plaintiffs' breach of fiduciary duty claims against the Domestic Defendants. They suggest that the Partnership's fiduciary duty should be extended to HGI and Hay Acquisition, "on whose behalf Matthews acted." This agency theory fails for the reasons articulated above. The district court correctly determined that "plaintiffs have alleged no [independent] source of a fiduciary duty as to these defendants" and the claim thus fails as a matter of pleading.

Plaintiffs also contest the district court's dismissal of their claim under Mass. Gen. Laws ch. 93A, § 11, which provides for a cause of action against any "unfair method of competition or . . . unfair or deceptive act or practice" in the conduct of "any trade or commerce." The theory of liability for this claim is the same as that underlying plaintiffs' misrepresentation claim, and the theory fails for the same reason the misrepresentation claim fails. Additionally, as the district court concluded, the alleged misrepresentations made by defendants did not arise out of any "trade or commerce" and thus do not fall within the purview of the statute. See Linkage Corp. v. Trs. of Boston Univ., 679 N.E.2d 191, 207 n.33 (Mass. 1997) (noting that the statute does not extend to "intra-enterprise disputes," such as "disputes between individual members of a partnership arising from partnership business," "because they are more similar to purely private

-27-

disputes and are not 'commercial transaction[s]'" (alteration in original) (quoting <u>Szalla</u> v. <u>Locke</u>, 657 N.E.2d 1267, 1269 (Mass. 1995))).

B.      <u>Rulings Relating to Lack of Personal Jurisdiction over HG Limited</u>

We also affirm the court's rulings with respect to HG Limited, the sole Offshore Defendant remaining in the case.

1.      <u>Exclusion of Platten Affidavit II</u>

Plaintiffs argue that the district court erred in refusing to admit into evidence Platten Affidavit II. The plaintiffs had argued to the court that Platten Affidavit II, which supplemented Platten's initial affidavit, should be admitted to counter certain "misrepresentations of fact" purportedly made by the Offshore Defendants in their motion to dismiss for lack of personal jurisdiction.

We review district court rulings pertaining to motions for reconsideration for abuse of discretion, <u>see</u> <u>United States</u> v. <u>One Lot of U.S. Currency ($36,634)</u>, 103 F.3d 1048, 1050 (1st Cir. 1997), and find none here. Plaintiffs sought leave to file Platten Affidavit II on December 10, 2003, nearly two months after they filed their opposition to the Offshore Defendants' motion to dismiss for lack of jurisdiction. By that time, they had already asked for leave to submit a second affidavit of Bruce Pfau, which the district court subsequently granted. The court was under no

obligation to continue to allow plaintiffs to make piecemeal corrections to their pleadings.

Plaintiffs argue that, in light of an intervening Illinois decision, see Joy v. Hay Group, Inc., No. 02-C-4989, 2003 WL 22118930 (N.D. Ill. Sept. 11, 2003), which they claim is favorable to them, the district court should have given them the opportunity, through the affidavit, to revise their pleadings to include additional factual allegations. But they admit that the facts they sought to add were in existence at the time they filed their original opposition. That they did not see the need for a fuller factual presentation when they were required to respond does not rescue their case. The district court was more than fair in its handling of the case.[10]

2.      Lack of Personal Jurisdiction over HG Limited

Plaintiffs also claim error in the district court's dismissal of HG Limited, the Partnership's successor-in-interest, for lack of personal jurisdiction.

---

[10]     Plaintiffs eventually submitted to the district court, in conjunction with their June 25, 2004 motion for reconsideration of the court's dismissal of HG Limited for want of personal jurisdiction, a third, and more comprehensive, Platten affidavit ("Platten Affidavit III"). This affidavit was belatedly filed, and it was the district court's prerogative whether to consider it. The district court made no reference to it when it summarily denied the motion for reconsideration. Given the court's silence and its earlier refusal to consider Platten Affidavit II, we believe the court did not allow Platten's third affidavit. See One Lot of U.S. Currency, 103 F.3d at 1050. Plaintiffs concede as much in their reply brief. We do not consider it.

Plaintiffs assert two bases for exercising personal jurisdiction over HG Limited. Their first argument is that the court may exercise specific jurisdiction based on HG Limited's assumption of the Partnership's obligations under the Agreement. Plaintiffs argue that specific jurisdiction over HG Limited exists under subsections (a), (c), and (d) of the Massachusetts long-arm statute. Mass. Gen. Laws ch. 223A, § 3. The state long-arm statute states, in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
>> (a) transacting any business in this commonwealth;
>> . . . .
>> (c) causing tortious injury by an act or omission in this commonwealth;
>> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . .

Id. Plaintiffs' second argument is that there is general jurisdiction over HG Limited by virtue of its relationship with HGI, which itself has sufficient contacts in Massachusetts to be hailed into federal court in this state.

The district court found that neither jurisdictional theory had sufficient factual support to carry the day. We review

-30-

those conclusions of law de novo, see Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005), and affirm.

The district court analyzed plaintiffs' jurisdictional claim under the prima facie standard of Boit v. Gar-Tec Products, Inc., 967 F.2d 671 (1st Cir. 1992). See id. at 675. Under that standard, "plaintiff[s] ultimately bear[] the burden of persuading the court that jurisdiction exists." Mass. Sch. of Law, 142 F.3d at 34. "[P]laintiffs may not rely on unsupported allegations in their pleadings," Boit, 967 F.2d at 675, but are "obliged to adduce evidence of specific facts," Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995). We, in turn, take those "specific facts affirmatively alleged by the plaintiff[s] as true . . . and construe them in the light most congenial to the plaintiff[s'] jurisdictional claim." Mass. Sch. of Law, 142 F.3d at 34. We also "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Id.

To establish personal jurisdiction, plaintiffs must show that jurisdiction is both statutorily authorized and consistent with the Constitution. See Daynard, 290 F.3d at 52. The Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as coextensive with the outer limits of the Constitution, id. (citing "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 280 N.E. 2d 423, 424 (Mass. 1972)); thus, the only inquiry that remains is the constitutional one, see Sawtelle

-31-

v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995).  Specifically, the question here is whether the Due Process Clause of the Fourteenth Amendment allows Massachusetts to exercise personal jurisdiction over HG Limited.

For the answer to this question to be yes, a defendant must have sufficient minimum contacts with the forum state "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  The "minimum contacts" standard has three requirements:

> For specific jurisdiction, the plaintiff's claim must be related to the defendant's contacts. For general jurisdiction, in which the cause of action may be unrelated to the defendant's contacts, the defendant must have continuous and systematic contacts with the state. Second, for either type of jurisdiction, the defendant's contacts with the state must be purposeful. And third, the exercise of jurisdiction must be reasonable under the circumstances.

Harlow, 432 F.3d at 57; see also Cambridge Literary Props. Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 63 (1st Cir. 2002); Noonan v. Winston Co., 135 F.3d 85, 89 (1st Cir. 1998).

a.    Plaintiffs' Claims of Specific Jurisdiction

Plaintiffs argue that specific jurisdiction over HG Limited exists with respect to both their contract and tort claims.

"For specific jurisdiction, this circuit divides the

constitutional analysis into three categories: relatedness, purposeful availment, and reasonableness." Daynard, 290 F.3d at 60. "For its contract claim[s], . . . [plaintiffs] may ask the court to draw inferences from the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 7 (1st Cir. 2002) (quoting Daynard, 290 F.3d at 52). "For its tort claims, [plaintiffs] must show a sufficient 'causal nexus' between [HG Limited's] contacts with [Massachusetts] and [plaintiffs'] causes of action." Id. (quoting Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir.1999)).

#### i. Specific Jurisdiction over Contract Claims

Plaintiffs' primary theory of specific jurisdiction is that their breach of contract claim arises from HG Limited's assumption of the Partnership's obligations under the Agreement, which one of the plaintiffs entered into in Massachusetts. Specifically, plaintiffs contend that there is sufficient evidence in the record to support the propositions that the Partnership solicited Platten to become a partner in Massachusetts, that the Agreement was executed in Massachusetts, and that Platten's performance under the Agreement occurred primarily in Massachusetts.

-33-

HG Limited, in turn, counters that it has its principal place of business in Bermuda; maintains its books, records, and accounts in Bermuda; and pays taxes in Bermuda. Moreover, it maintains that it has never attempted to solicit or service customers in Massachusetts or to derive substantial revenue from services rendered in the state. As a holding company, it exercises only limited control over HGI, "a fourth-tier subsidiary," which has an office in, among other places, Massachusetts.

We assume for present purposes that HG Limited fully assumed the Partnership's obligations under the Agreement. Nonetheless, we hold, as did the district court, that the record lacks support for plaintiffs' allegations that the Partnership established sufficient minimum contacts in Massachusetts to be subject to suit by plaintiffs in this state. Our inquiry begins and ends with the first prong of the constitutional inquiry, that of relatedness.

In support of specific jurisdiction over their contract claims, plaintiffs rely almost solely on the affidavits of Paul Platten. The first of those affidavits, and the only Platten affidavit admitted into the record, makes the following relevant allegations:

> 2. In February, 1989, I was hired by the defendant [HGI] with the Boston Office . . . .
>
> 7. As a condition of employment with the Hay Group, I was required to become a partner in the Partnership and, in or about 1992, in

Massachusetts, I entered into an Agreement . . . with the Partnership . . . .

Aside from these allegations, plaintiffs provide no additional details about the place and circumstances of contracting. Flannery and Pfau's affidavits are silent with respect to the place of contracting, and neither of the two has ever claimed that their agreements with the Partnership were signed or executed in Massachusetts.

The Supreme Court has held that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other [s]tate for the consequences of their activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950)). Evidence of a defendant's entry into a contractual relationship with a plaintiff in another state is relevant to whether the defendant "reached out" to that state. But the mere fact that a plaintiff entered into a contract with a defendant in the forum state is not in and of itself dispositive of the personal jurisdiction question. "The [Supreme] Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests or on 'conceptualistic . . . theories of the place of contracting or of performance.'" Burger King, 471 U.S. at 478 (omission in original) (quoting Int'l Shoe, 326 U.S. at 319; Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316 (1943)).

-35-

"Instead, [the Court has] emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" Id. at 479 (quoting Hoopeston, 318 U.S. at 316-17).

As the district court points out, plaintiffs' affidavits are "silent as to details regarding where negotiations took place, where the agreement was presented for signatures, where it was signed, where it was to be performed, and who represented the Partnership at the time of the negotiations." Aside from Platten's conclusory allegations that he performed Partnership business in Massachusetts, none of the plaintiffs offer additional information on whether the Partnership or HG Limited directed an out-of-state activity at the forum state, see Phillips Exeter Acad., 196 F.3d at 289, whether the parties' Agreement contemplated ongoing interaction between Platten in Massachusetts and the Partnership or HG Limited in Bermuda, see Daynard, 290 F.3d at 61, or whether the two other plaintiffs' claims are at all related to the Partnership's and HG Limited's contacts in Massachusetts. Plaintiffs fail to make out a prima facie case for specific jurisdiction on the contract theory.

ii.  Specific Jurisdiction Based on
     Misrepresentation and Breach of Fiduciary
     Duty Claims

Also unsuccessful is plaintiffs' argument that specific jurisdiction over HG Limited exists on account of the Partnership's alleged misrepresentation and breach of fiduciary duty.

To satisfy the relatedness prong of the constitutional inquiry in a tort case,

> [t]he evidence produced to support specific jurisdiction must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts.  The relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection. This court "steadfastly reject[s] the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect."  "Instead, the defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case."  A broad "but-for" argument is generally insufficient. . . .  "[D]ue process demands something like a 'proximate cause' nexus."

Harlow, 432 F.3d at 60-61 (citations omitted) (quoting Pleasant St. I, 960 F.2d at 1089; Cambridge Literary Props., 295 F.3d at 65); see also Phillips Exeter Acad., 196 F.3d at 289.  None of plaintiffs' claims is sufficiently related to HG Limited's Massachusetts contacts.

Plaintiffs allege that Platten was induced to enter into the Agreement by misrepresentations that were made by an agent of the Partnership in Massachusetts and that "[t]he scheme to defraud

and mislead Platten was furthered by four letters sent to him in Massachusetts from the Partnership's New York lawyers and Matthews himself." They further allege that "[t]wo similar letters were sent by Matthews and the Partnership's New York counsel to Flannery in Massachusetts."[11] These letters all dealt with the non-competition and termination distribution clauses of the Agreement, and the plaintiffs' rights and responsibilities thereunder.[12]

Again, plaintiffs failed to provide any details in their complaint or affidavits about the circumstances surrounding the parties' entry into the Agreement, including any misrepresentations that were made at that time, who may have made them, and in what capacity. Thus, any alleged misrepresentations made by the Partnership at the time of contracting cannot be the basis of specific jurisdiction over HG Limited.

As for the correspondence from the Partnership's lawyers and Matthews to Platten and Flannery, that itself does not suffice to show relatedness. See Far W. Capital, Inc. v. Towne, 46 F.3d

---

[11] Plaintiffs do not allege that any of the "Hay Group" entities or their representatives directed any correspondence to Pfau in Massachusetts. The record shows that Pfau did not live or work in Massachusetts during the time period relevant to the litigation.

[12] The two letters that each plaintiff received were a September 4, 2002 letter from Matthews, which stated, among other things, that "[t]he Partnership Agreement provides that your termination distribution may be reduced in amount if you are in breach of the [non-competition obligations]," and a September 26, 2002 letter from HG Limited's counsel, which gave notice that "[y]our eligibility [for distributions] is . . . deferred" because of violation of the non-competition clause.

1071, 1077 (10th Cir. 1995) ("It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts."); see also Nicholas v. Buchanan, 806 F.2d 305, 307-08 (1st Cir. 1986) (per curiam) (collecting cases). We are doubtful that the letters even provide a basis for a viable cause of action. Platten and Flannery did not allege reasonable reliance on the purported misrepresentations; thus, any harm that Platten or Flannery suffered did not arise out of those misrepresentations, but instead out of the Partnership's alleged breach of the promise to pay them their termination distributions. In specific jurisdiction terms, plaintiffs have not shown a "material connection" between their injuries and HG Limited's contacts in Massachusetts and therefore cannot meet the relatedness requirement of the due process inquiry.[13] See Harlow, 432 F.3d at 61.

---

[13] Plaintiffs rely on Murphy v. Erwin-Wasey, Inc., 460 F.2d 661 (1st Cir. 1972), which this court decided before the advent of the Supreme Court's modern personal jurisdiction cases, see, e.g., Burger King, 471 U.S. 462; Calder v. Jones, 465 U.S. 783 (1984), for the proposition that "there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation, for such a sender has thereby 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" Murphy, 460 F.2d at 664 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Murphy, however, was an intentional tort case in which plaintiff's alleged injury came directly as a result of defendants' fraudulent misrepresentations. Id. at 663. Murphy also recognized that where "it is clear from his allegation that plaintiff was not deceived by [the allegedly tortious] acts, jurisdiction may not be asserted under [Mass. Gen. Laws ch. 223A, § 3(c)]." Id. at 665.

Nor does HG Limited's alleged breach of fiduciary duty satisfy the constitutional standard for asserting specific jurisdiction.  "A breach of fiduciary duty occurs [in the state] where the fiduciary acts disloyally." Phillips Exeter Acad., 196 F.3d at 291.  Thus, for minimum contacts analysis, even if the effects of the alleged breach were felt in Massachusetts, there is no evidence in the record that the alleged breach itself "occurred" in this state, see id. (concluding that "an in-forum effect of an extra-forum breach . . . [was] inadequate to support a finding of relatedness"), as opposed to, say, Bermuda, where HG Limited has its usual place of business, or Pennsylvania, from whence Chris Matthews allegedly controlled the Partnership.

b.    General Jurisdiction over HG Limited

Plaintiffs argue that general jurisdiction also exists over HG Limited by virtue of its parent-subsidiary relationship with HGI and of Platten's activities, as a partner, in Massachusetts.

"General jurisdiction [may] exist[] when the defendant has engaged in 'continuous and systematic activity' in the forum, even if the activity is unrelated to the suit." Daynard, 290 F.3d at 51 (quoting Pleasant St. I, 960 F.2d at 1088).  "The standard for evaluating whether [defendants' alleged] contacts satisfy the constitutional general jurisdiction test 'is considerably more stringent' than that applied to specific jurisdiction questions."

Noonan, 135 F.3d at 93 (quoting <u>Glater</u> v. <u>Eli Lilly & Co.</u>, 744 F.2d 213, 216 (1st Cir. 1984)).

The bar is set even higher in a case like this one, in which plaintiffs seek to disregard the corporate form. "The mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary. There is a presumption of corporate separateness that must be overcome by clear evidence . . . ." <u>Escude Cruz</u> v. <u>Ortho Pharm. Corp.</u> 619 F.2d 902, 905 (1st Cir. 1980) (citation omitted); <u>see</u> <u>also</u> <u>Donatelli</u> v. <u>Nat'l Hockey League</u>, 893 F.2d 459, 465 (1st Cir. 1990); <u>My Bread</u>, 233 N.E.2d at 752 (elaborating the contours of the corporate disregard doctrine).

Relying primarily on Platten's affidavits, plaintiffs argue that HG Limited engaged in continuous and systematic activities in Massachusetts "through the Partnership's active control over HGI's Boston office" and "through Platten, who routinely engaged in Partnership business in Massachusetts."

Again, there is no reason to disregard the corporate form in this case. Ultimately, nothing in the record substantiates the proposition that HG Limited "plainly made a choice to avail itself of the forum's benefices." <u>Donatelli</u>, 893 F.2d at 466. No personal jurisdiction, specific or general, exists over the defendant.

## 3. Denial of Motion for Partial Reconsideration and for Jurisdictional Discovery

Plaintiffs also claim error in the district court's summary denial of their motion for partial reconsideration of its dismissal of HG Limited for lack of personal jurisdiction. With the exception of allegations based on Platten Affidavit III, which was not admitted into the record, their motion for reconsideration merely reiterated the allegations and arguments advanced in their reply to the Offshore Defendants' dismissal motion. There was no abuse of discretion in the district court's declining to reconsider its previous ruling. See Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (1st Cir. 2000) (holding that "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law," but is not appropriate as a "vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments[] or supporting facts which were available at the time of the original motion").

This leaves plaintiffs' final objection, which is to the district court's summary denial of their motion to defer ruling on the Rule 12(b)(2) issue pending jurisdictional discovery, which they requested as an alternative to their motion for partial reconsideration. Because "[t]rial management is peculiarly within the ken of the district court," United States v. Saccoccia, 58 F.3d 754, 770 (1st Cir. 1995), we review only for abuse of discretion,

-42-

and find none here.

"[A] diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962, 964 (1st Cir. 1997). However, the availability of jurisdictional discovery is subject to the district court's discretion. See id.; accord United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625-26 (1st Cir. 2001).

"If a party needs jurisdictional discovery, that party has an obligation to request it in a timely manner." Barrett v. Lombardi, 239 F.3d 23, 28 (1st Cir. 2001). Plaintiffs had ample opportunity to request jurisdictional discovery in the full year between when they filed their initial complaint in state court and when the district court ruled on the Offshore Defendants' motion to dismiss for lack of personal jurisdiction. Yet, plaintiffs made no attempt to do so until after the district court ruled in defendants' favor. That alone suffices to justify the district court's rejection of their motion. See id. at 28-29 (finding no abuse of discretion in the district court's denial of discovery when defendant did not seek discovery at any time prior to the entry of an adverse judgment).

## III.

We <u>affirm</u>.  Costs are awarded to defendants.